Okay, our next case is Liberty Lincoln-Mercury, Etal VFord Motor Company, Mr. Hanman. Thank you, Your Honor, and may it please the Court. Christopher Hanman for Ford Motor Company. With the Court's permission, I'd like to reserve three minutes for rebuttal. That request will be granted. Thank you. In Liberty II, this Court overturned Ford's initial effort at cost recovery. But this Court was careful to emphasize that the statute does not categorically preclude all methods of cost recovery. To the contrary, this Court, after analyzing the statute and the First Circuit's decision in Acadia, construing a nearly identical statute, declared, quote, we agree with Acadia's holding that the statutes at issue do not preclude cost recovery systems that affected through wholesale vehicle price increases. Ford took this Court to mean exactly what it said. Relying on the clear-cut guidance in Liberty II, Ford designed a new cost recovery system. The New Jersey cost surcharge at issue here. That system was carefully crafted to mimic the exact wholesale price terms that this Court upheld in Liberty II, and again, quoting from the opinion, was beyond the regulatory reach of the NJFPA. But what the appellees say in this case is that we ought to be looking at this thing through the sort of the prism of the facts here and conduct, I guess, a temporal analysis. And it's not really beyond the reach of the remedial statutes because it's an end-around, as they characterize it. So even assuming that what's in Liberty II is not dicta, why shouldn't we do that? Well, for the same reason the First Circuit didn't do the end-around analysis in Acadia, the Maine Supreme Court didn't do the end-around analysis in Acadia II, and the reason this Court in Liberty II didn't seem to think there was any room for end-around analysis. The New Jersey cost surcharge at issue here, it's undisputed, operates in exactly the same method and function as the surcharge at issue and upheld in those two Acadia decisions. There's no mechanism by which that surcharge operates any differently than the one at issue here. So to the extent this Court were to go out and say that there was an end-around here, it would be in conflict with the First Circuit's decision and the Maine Supreme Court's decision, and I don't think it could be harmonized with what this Court weighed in on in Liberty II. Well, let me ask you this question. Is there merit to the notion that the surcharge, that prior or previously it was based on projected reimbursement compliance and now it's based on actual reimbursement compliance, and therefore, you know, you're really talking about the same thing? No, and I think that gets to an important point, Judge Greenaway. In both this case and the Acadia cases, the surcharge is assessed as a wholesale price function. It doesn't matter whether it's a retrospective inquiry or a prospective inquiry into recovering costs. The reality is at the end of the day, Ford is recovering costs through a particular transaction. That transaction is the assessment of wholesale vehicle costs. This Court drew a very crisp distinction between wholesale vehicle cost transactions and transactions assessed as a matter of warranty reimbursements. And at 564 on to 565 of the Liberty II opinion, the Court said that the decreased compensation that a dealer may appreciate as a result of a wholesale transaction, that's the transaction that it says, quote, does not violate the statute, end quote. And the Court confirmed that later on at 565. So whether you are trying to – Is that dicta or is that the holding? I think it is the holding, and it's the holding for this reason. As this Court in McDonald recognized, a holding is more than who won or who lost. A holding goes to the nature of the analysis. And the way this Court approached this case in Liberty II is the way courts often do, which is to say we are going to define the meets and bounds of the statute and say what's permissible and what's not. It was after it defined what is permissible, that's to say everything Acadia thought was permissible, wholesale cost transactions, it looked and compared what the original Ford surcharge was and how it stacked up against the permissible wholesale price increases at issue in Acadia. What was the method of arriving at the wholesale price increase here? If you look at – it's paragraph 15 of the Berry Declaration. You can find that at page 133 of the Joint Appendix. And he walks through that and says what Ford did was they estimated the amount of surcharges that – I'm sorry, amount of warranty repairs that dealers in the state of New Jersey would perform and then took the difference based on those retail rates from their national rate and then divided that based on the projected sale – or I'm sorry, from the sales from the previous year. And it was that then that yielded a $125 charge per new retail. Why didn't they put it – why didn't you put it in your sticker price? Well, we could have, but there's no requirement that they have to. And the same argument was made about it had to go on the Moroni sticker in the First Circuit, and the First Circuit said no, there's no requirement. And for this reason, the NJFPA, just like the Maine statute at issue in Acadia, has a very narrow focus. It focuses on warranty retail transactions. What it doesn't do is regulate the prices that manufacturers can charge. It doesn't inhibit freedom of contract in that fundamental way. If it's going to do that, it has to say so clearly as Maine subsequently did. Is a vehicle surcharge, a wholesale vehicle surcharge of this type, beyond any analysis that relates to the Warranty Reimbursement Act under any set of circumstances? I think you don't have to go that far, of course, in this case, but I think that's actually true. Certainly nothing in this Court's decision admitted of any limitation on how a wholesale price transaction might work. The only exception would be that if the manufacturer, I suppose, were to come up with some incredibly arbitrary number that would raise the rates by thousands of dollars as a surcharge. There's a separate provision in the NJFPA that deals with 5610-7, which prohibits penalties that a manufacturer can charge. Perhaps that might qualify. I'm only trying to hypothesize here. The reality is $125 is not a penalty, and it's well within the ambit of decisions other courts have upheld. Let me ask you about the statute. You say that the statute unambiguously permits the assessment of this charge, and the dealers say that the statute unambiguously supports their position. Doesn't the fact that both of you disagree with what the statute says make the statute ambiguous? No. You know, you find parties doing that all the time. You find parties saying they're each entitled to summary judgment because there's no disputes of fact in one way or the other. This is a classic situation in which you have two parties apparently saying that they have patent indignities. Do you think the statute is unambiguous? Yes, and I think we are in good company there. We have the First Circuit that said the same thing about the very similar Maine statute. We have the First Circuit that said the same thing about the Maine statute, and I think we have this court on record in Liberty II effectively saying as much. And I think there's no question about, as far as ambiguity is concerned, to the extent does this statute regulate wholesale prices, that's a very easy answer. It quite clearly doesn't. You will not find the words wholesale, vehicle sales, or retail sales, or anything of that sort. That was one of the guiding principles that the First Circuit held in Acadia, and it's something that this court, of course, emphasized at 564, the opinion in Liberty II. So the key in your view to making sure that you're complying with the statute is your solution is working through the wholesale price function. The fact that you're doing the calculation that clearly is attempting to recoup the money is irrelevant. That's correct. And there was no question that Ford was transparent about what it was trying to do in Maine when it imposed the WPS at issue there. The First Circuit acknowledged as much. This court quoted that acknowledgement in the Liberty II decision. And there's nothing bizarre or radical about that. All it shows is that Ford is trying to do what manufacturers do, which is recoup the costs of regulatory compliance when states increase the costs of doing business. So you don't view the New Jersey statute as a prohibition on recouping it, and then Liberty II as a way of ensuring that that prohibition has teeth. You're just saying, okay, there's a prohibition. It obviously has nothing to do with wholesale price function. We'll put it into that category. And clearly the only way the recoupment is going to work is we do our calculations, but this is how we characterize it. Therefore, we recoup our money, yet we are compliant with the statute. That's correct. And that's more than mere technicalities. First of all, that's exactly what the First Circuit signed off on, expressly held in a cadence, what this court, I think, endorsed in Liberty II. But I would also refer the court to footnote six of the Liberty II decision. There's more, as this court said, than just statutory significance to that interpretation. There's a practical significance as well. The reason that the New Jersey legislature is concerned particularly about warranty reimbursement transactions is because those are transactions that the dealer cannot control the volume or the price or the profitability or the timing of warranty repairs. They have to accept all comers, whether they were bought at that dealership or not, and get reimbursed at the rate that the manufacturer or the statute may specify. That's not the case when it comes to wholesale cars. Well, so it falls disproportionately under the DPS. Is that what you're saying? What I'm saying is under the old system. The DPS. Exactly. The reason why that was so problematic is because of the way that there's cost recoupment. To get back to Judge Greenaway's question, it's not as if our argument is not that there's no, that the statute doesn't prohibit any type of cost recovery. This court quite clearly did ban one type of cost recovery, but it's when that cost recovery directly regulates the warranty transaction so that a dollar earned in excess warranty fees under the statute is turned around and assessed against that particular dealer the next month. If Ford had assessed or put a vehicle surcharge, a wholesale vehicle surcharge, just as to Liberty and no other dealers, would that allow an analysis under the Warranty Reimbursement Act as it related to that? I think it would depend on the way in which that was implemented. I think there's also other provisions that might come into play about concerns about discrimination and fairness in the way Ford would be treating its dealers under the contract. I understand the discrimination argument as it relates to the other dealers, but would it allow the sort of end-around argument that you say does not exist in this case? Again, I think that's an entirely distinct question, because at that point you may no longer qualify as a legitimate wholesale price term. What makes it a legitimate wholesale price term is that you have a manufacturer assessing a flat fee on all dealers throughout the state, on every car, regardless of make or model. I can see that. Obviously, I changed the facts for the purpose of my question, but it goes to my earlier question. Can you ever do, under any set of circumstances, a Warranty Reimbursement Act analysis when there's a vehicle surcharge, a wholesale vehicle surcharge? Your answer seems to be maybe. Well, I think it depends on – I think that might depend on how a court is going to determine whether that actually is a bona fide wholesale price surcharge. That's what this Court said in Liberty II. It has to be a bona fide wholesale. And I don't know, under the facts that you are positing, Judge Jones, whether a price imposed on a single deal in the state would actually qualify. I understand. That's my answer. Thank you. All right, we'll have you back on rebuttal, Mr. Chairman. Thank you, Your Honor. Mr. Chase. Thank you, Your Honor. Good afternoon, Your Honors. Good afternoon. Your Honor, may I reserve one minute on cross-appeal, if that's appropriate? You may not. Thank you, Your Honor. Your Honor. We don't have any procedure for that, so we're not going to start it today. Thank you, Judge. This case poses a very clear, bright-line question for the Court. The core of it is, in our estimation, Ford has made a frontal assault on this statute and the ability of the legislature to legislate. The legislature has said, in no uncertain terms, shall reimburse at retail. It says there can't, by agreement or otherwise, be restrictions on that. It has to be without deduction. Those are statutory terms in Section 15 of the Act. But Ford stands up here and says, but we can do it because we placed the charge to the dealer in the invoice, only for New Jersey dealers, not nationwide, just for New Jersey dealers. On depositions, they were all candid about what they did. They figured out a way to best approximate what would be their standard markup across the country. That has nothing to do with cost. They didn't present any cost figures. This Court spent three pages in Liberty II saying that, apparently, that Ford could do just that. So why can't they? Your Honor, this Court did not say that what they could do is put it in another column and just do it with New Jersey dealers. And Judge Bassler grabbed onto that because Ford made that argument to him. And he said, essentially, wait a minute. This is a beneficial act, which we in New Jersey interpret broadly and remedially in favor of the franchisee. And you are saying to me that you're going to take this benefit under the statute and take it away with impunity. The Third Circuit didn't say that. The Third Circuit wisely, I think, said, yeah, you can recapture your costs. And we've suggested, that is the plaintiffs have suggested, that a way to do that is to raise your inventory costs undiscriminatorily nationwide, raise the actual cost of the vehicle in the ordinary course. That's the way they do it. Note, Your Honors, is part of your claim that regardless of the effect of the statute, New Jersey dealers are being treated differently than the rest? Do we have an equal protection claim now? No, Your Honor. What we have is a wholesale price increase claim that's false. Because what they've done, Your Honor, is they've simply put it in a different box. But you have to, do you agree with this proposition? Do you agree that there is a box somewhere that is permissible? Let's start with that broad proposition. I would have to put it differently, Your Honor. If they raise the wholesale price uniformly across the country, which is what they do with their models. There's no dispute on these facts. What they did was unique to New Jersey. They don't do it anywhere else. They put this cost on New Jersey. So you mean that subterfuge, it has to be to offset this because it's only New Jersey? Well, it does, Your Honor, because otherwise they're in violation of federal law on equal pricing. They have the same price per vehicle, per model, all throughout the country. Okay, so your position is, Judge, we think they can comply with the statute and be fair, but the only way for them to do that is to enact some sort of wholesale increase that affects all dealers throughout the country. Yes, Your Honor. And that's the only circumstance that you contemplate that would be compliant with the statute and compliant with fairness, et cetera. What they cannot do, Your Honor, to put it in converse, is they cannot charge the dealers who are getting the benefit of the statute, they're charging them back for the benefit of the statute. So they have done it. The shall reimburse at retail becomes meaningless because Ford said, no, no, we don't want to do that. We're just going to make sure that you are a lot less than retail. But in this case, I mean, you obviously don't like what they've done, but they were clever. You know, they had an advance warning as to how to do it in Acadia, but they didn't do it per warranty, per RADA. They basically said, we have a cost in New Jersey and we're going to divide it by the number of vehicles we sell in New Jersey and we're going to increase our cost. It's sort of like them saying, well, we have a plant that's further away from New Jersey than any other part in the Mideastern region and we're going to charge New Jersey dealers more money because it costs us more to do business in New Jersey. They'd be allowed to do that, wouldn't they? Transportation costs? I'll come back to the cost in a moment. But, no, the statute is specific. The statute says they can't do that. Where does it say that? It says, other than the word without deduction. The motor vehicle franchisor shall not, by agreement, by restrictions upon reimbursement or otherwise. Which paragraph are you reading from? 15B, 56 colon 10, 15B. It's the first sentence in that. And then the first sentence in C, Your Honor, says without deduction in it. Same kind of thing. The idea that the legislature somehow was letting them take back what the legislature had guaranteed the dealer. And there were purposes to this. This is all in the record, Your Honor. But this was one of the risks that the dealers ran when they ran to the legislature to get the Warranty Protection Act. That's really what this was. I mean, they asked for special protection because they said, you know, we're not making as much money as we think we ought to be making on this warranty work. And they got a warranty protection statute that says you have to pay the prevailing rate, not what you think is the right markup on warranty work. Well, Your Honor, I. So isn't that a risk that they ran? No, Your Honor. And I do take issue with the idea that we interpret statutes based on who tried to get them to come into effect. This kind of statute exists all over the country. The majority of states. Not everywhere. Pardon me? It doesn't exist everywhere. No, it doesn't exist everywhere, Your Honor. The majority of states have them. To go back to your reading of the statute, you say that the statute prohibits, in effect, a backdoor reimbursement or a way to recoup the reimbursement, correct? Yes, Your Honor. And then there's an or otherwise. And does the or otherwise, your view, take into account an argument by Ford that there are costs of compliance? Setting aside the reimbursement issue. But its cost of compliance can't be taken out on the beneficiary. That's what this statute stands for. And Ford did exactly what the statute forbade. Is that the or otherwise portion of the statute? That's consistent with it, but that's not the only thing. It's the without reduction language as well. It's the shall reimburse language. Is it your view that Ford cannot slap a wholesale surcharge on vehicles under any set of circumstances, specific to New Jersey that has to do with compliance with any remedial New Jersey statutes that deal with consumer protection? Yes, Your Honor. In this case, dealer. The answer to that is a resounding yes. Tell me again why that is. Why do you read the statute? Well, the statute says that. The purpose of the statute in this specific language is to make sure that the dealers actually get retail. And the reason for that is so that they will do good warranty. But I'm out of that for a second. Forget about the reimbursement on the warranty. I'm talking about the general cost of compliance. Where do you find that? Well, on the cost of compliance, Your Honor, doing it to New Jersey dealers who are beneficiary essentially erases the benefit because it's unique to New Jersey dealers. It's the only place they did this. But where is that in the statute? Where is that prohibited? Well, I think it's in the language that I read. They did it every way in legislative language that they could by forbidding it directly. They forbade them from doing that. So if I put a surcharge, a wholesale surcharge on a vehicle, if I'm a manufacturer and I put a wholesale surcharge on a vehicle in New Jersey, I've got to justify? Well, you're saying per se I can't if it has to do with the cost of compliance. My answer is per se they can't when they say the reason is we want to bring you to the nationwide cost plus 40 stance. Suppose they said no reason. If they said no reason, they'd still have a problem because then they would be discriminating against New Jersey dealers solely based on price. Okay, so the answer here is you go to Detroit. There's a powwow. We've got this problem in Jersey. We're going to hit dealers in all 50 states up so that we can recoup our New Jersey money, and that's the only way, in your view, they could be compliant with the statute and recoup their money. Because they're underpaying dealers nationwide at cost plus 40. That's their problem. That's a problem they have to deal with. Cost plus 40 is not profitable. We proved that in the first Liberty case. Well, let me go back. I'm sorry, just one second. Go ahead. Could you just answer the question for a second? Your answer is that's the only scenario that you can contemplate that they can recoup and be compliant. I think that's what this Court said. I think that's what they were talking about when they said, of course you can recapture your costs. We say they can recapture their costs, but they have to do it in compliance with the law. They haven't done that here. Well, how do you do it, though? I mean, let's go back to Liberty II, and that was going to be my question. So Liberty II says you can do a surcharge to get what? Well, Liberty II's, in my estimation, really says that they can recapture their costs. It doesn't instruct Ford on how to do that. But it does reference Acadia. I mean, you can't ignore. It does reference Acadia. You can't ignore Acadia in that discussion of what Liberty II said. And in our papers, we don't ignore Acadia. First of all, we thought Acadia was wrongly decided, so let me say that up front. Of course. But in addition to that, this Court distinguished Acadia on several grounds. Acadia had a different statutory purpose in mind that they were looking at. This Court rightly, based on New Jersey law, said that we're protecting dealers in New Jersey as well as consumers. But again, I go back to what costs can you recoup? Because you say you can't have, definitionally, a vehicle surcharge, a wholesale vehicle surcharge that recaptures the cost of compliance. You can't, in your view, backdoor or end around and get back what you're paying out on the warranty claims. So what are you getting? What does Liberty II stand for? Liberty II stands for that you cannot charge the dealer for the benefit that the legislature has given it. That wasn't my question. My question is what can you get back? What costs can you recoup? What does it mean? If you're going to recoup, if you want to recoup the cost of warranty, you have to do it in a non-discriminatory way across the nation. You can't do it by discriminating against New Jersey dealers this way. And I'd like to add before I'm done. You're not saying the statute requires that. I say the statute requires that because, Your Honor, the statute says shall reimburse at retail. If that has meaning, then it's got to mean what we're saying. After all, what are the limits on Ford? If Your Honor's reverse and you say Ford is right, they can do anything in terms of adding to that cost factor in the invoice, anything. Whatever they decide. Well, but doesn't that make the dealers stop and think before they run and ask for special statutory protection? Because some dealers who may not have as much warranty work as others are going to end up getting hit, ending up going to pay a disproportionate share of that surcharge. Well, I think the legislators were persuaded unanimously that this is a fair and reasonable statute. And I think, Your Honor, I don't know all the history about how this came before the New Jersey legislature, but it's common in many states. But one fact that I would point out that hasn't been addressed very much is Ford has said nothing in this record about its cost. All it has done is taken an arbitrary benchmark of cost plus 40 and acted like anything different from that is its cost. And this court said, yes, you have a right to recoup your cost. But we asked Ford about cost and we got nothing in response. All we're doing, all their witnesses said, is comparing it to our benchmark. Well, why do you have a cost plus 40 benchmark? But, again, you read Liberty II as saying that recoupment of costs is permissible so long as the recoupment is in all 50 states. It can't be New Jersey specific. Frankly, I don't see that anywhere in Liberty II. Aren't you extrapolating from the holding in Liberty II? I'm extrapolating from what the legislature said in the statute and from the language in Liberty II that it just – The statute doesn't have anything to do with vehicle surcharges, though, does it? I think this court said a rather uneventful thing in saying, yes, you can recapture your costs, but it didn't say how and under what circumstances, and I think this statute forbids it. Your Honors, time has not allowed me to get into our area of cross-appeal at all. Those are, I think, very well and fully briefed. So unless Your Honors have questions for me on those, we think the interest rate should be the statutory interest rate. We think the passing on defense was unlawful, and we think that the transmission and engines piece is very clearly something that should have been summary judgment but the other way. Okay. Thank you. All right. Thank you, Your Honors. Thank you very much, Mr. Chase, and we'll have Mr. Handman back on rebuttal. I'm sorry, Your Honor. I said we'll have Mr. Handman back on rebuttal. Thank you, Your Honor. I think Judge Jones asked the key question, which is where is it in the statute that prohibits Ford from doing what they've done here? The answer is there is nothing that refers to wholesale prices. That's the point this Court made in Liberty II. It's the point the First Circuit made in Acadia. These statutes don't regulate wholesale prices. They leave it, as these decisions customarily are, to the manufacturer to decide. Where a legislature wants to restrict a manufacturer from recouping those costs, it can say so expressly. Maine did so in the aftermath of the Acadia decisions. Three other states have done the same, Florida and Virginia at least, and we cite those in a footnote in our brief. That's the way a state goes about and does a truly radical thing of saying a manufacturer cannot recoup the costs that a state is going to impose on it. And nothing in the statute says anything about having to defer the cost across the country. In response to Judge Greenaway's question, that, too, isn't in the statute. And yet I hear counsel for the plaintiffs say that, no, that's the only legitimate way. That may be the way he would prefer it, but, again, the statute in its plain language says something entirely differently. Mr. Chairman, let me ask you about one other part of the case. Why it wasn't the claim that Ford underpaid the dealers on the engine and transmission work sufficient to give you notice that they also had a claim that in some cases they didn't get paid at all? Oh, because the claims are entirely distinct. The claim that was initially formulated in the second amended complaint, there's only three references to it, paragraphs 58, 79, and 89 of that complaint, refer repeatedly always to a retail rate. That's what they asked for. It's only later do we find out that it has nothing to do with a retail rate, but that there were dealers who never made a claim at all who are asking to be paid for claims they never made. Now, that is problematic for two reasons. One, it came on the eve of an eight-year litigation a month before trial, and the district court, in his discretion, said, I'm not going to hear that. Well, but they say they weren't given any specifics as to how to make those claims. Oh, well, that's not true. And you can actually, we know that's not true because two of the plaintiffs, the only two plaintiffs in this appeal who are asserting those claims, made claims under that same process. If you look at paragraph 23 of the Tabor Declaration, that's page 12 of our supplemental addendum to the yellow brief, he points out Oasis and Liberty, those two plaintiffs, actually made claims under this claim process for engines and transmissions. They simply didn't make all of the claims they may have had. And what they're basically asking for now is special treatment. Despite the fact that the 61 other plaintiffs in this case have all made claims and are not asserting this, and despite the fact that they have made some claims in the past successfully and have been fully reimbursed, apparently there have been a few that fell through their own cracks and are now saying that the statute imposes on Ford a voluntary obligation to come forward with those payments. The statute doesn't say that. The statute says, wait until you get a claim, Ford, and when you do, you promptly pay. Ford has always, and this is indisputed, always paid on all claims properly asserted. And that disposes of that cross-appeal issue. And, of course, the damages issue, those all fall away if this Court reverses on liability, as we think it should, whether you view Liberty as binding or simply correct, because that's the way the statute deals specifically with those questions. Okay, Mr. Hanlon, we thank you, and we thank both counsel for the case. It was very well argued, and we'll take the matter under advisement.